c322mehc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
    MONICA MEHTA, as
3   Administratrix of the Estate
    of Ashwani Mehta, deceased,
4   and individually,

5           Plaintiff,                    New York, N.Y.

6           v.                            11 Civ. 2144(PAC)

7   MEGABUS NORTHEAST, LLC, et al,

8           Defendants.
    ------------------------------x
9
                                         March 2, 2012
10                                       2:30 p.m.

11

12  Before:

13                      HON. PAUL A. CROTTY,

14                                       District  Judge

15

16

17

18                      APPEARANCES

19

    LAW OFFICE OF JONATHAN C. REITER
20       Attorneys for Plaintiff
    BY:  JONATHAN C. REITER
21       MERYL I. SCHWARTZ

22

    GALLO, VITUCCI & KLAR, LLP
23       Attorneys for Defendants
    BY:  HEATHER RAGONE

24

25

c322mehc

1        THE DEPUTY CLERK:  Your Honor, this is in the matter

2   of Monica Mehta v. Megabus, et al., docket number 11 Civ. 2144.

3        Counsel for plaintiff, please state your appearances.

4        MR. REITER:  Jonathan C. Reiter for the plaintiff.

5        THE COURT:  Good afternoon, Mr. Reiter.

6        MS. SCHWARTZ:  Meryl Schwartz for the plaintiff.

7        THE COURT:  Good afternoon, Ms. Schwartz.

8        THE DEPUTY CLERK:  For the defendant.

9        MS. RAGONE:  Heather Ragone from Gallo, Vitucci &

10   Klar, for defendant Megabus.

11        If I may, I have spoken with Patrick Brophy, who

12   represents defendant John Tomaszewski.  He will not be

13   appearing today.

14        THE COURT:  Mr. Reiter.

15        MR. REITER:  Your Honor, we conducted a mediation of

16   this case at JAMS, before the Honorable Betty Weinberg Ellerin,

17   former Presiding Justice of the Appellate Division First

18   Department.  We just did this on Tuesday.  And we agreed to a

19   settlement in the total sum of $3,150,000, to be paid by and on

20   behalf of the defendant Megabus Northeast, L.L.C., and their

21   insurers in full satisfaction of this case.

22        I have spoken to the defendants about this, and what

23   we are proposing to do, because the plaintiff, who is here,

24   Monica, the mother of the two children and the wife of the

25   decedent, is from India and she needs to return to India on

c322mehc

1    Saturday because her two children are still there being taken

2    care of by relatives.  What we would like to do today is put

3    the settlement on the record and submit to you an order or at

4    least the terms of an order essentially settling the matter,

5    setting the attorney's fee, which is -- our retainer is 30

6    percent -- we are waiving all disbursements and costs in the

7    case -- and also depositing the remaining sum for the

8    beneficiaries of the settlement, which would be $2,205,000,

9    which is the remainder after payment of attorney's fees,

10    payable into an escrow account to bear interest, and that we

11    will submit a further order to your Honor distributing this

12    money after we have had an opportunity to submit some plans to

13    Monica, the mother, regarding the children.  Because it is my

14    understanding, and perhaps if we can speak to your Honor

15    privately or at the bench to explain some of the parameters of

16    what we need to do here, because the children right now are age

17    seven and four, and we understand that it is typically the

18    position and practice of the court to maintain jurisdiction

19    over the funds for the infants, and we have some concerns about

20    that, and we would like to be able to put that money away

21    appropriately for the infants until they are 18 in the usual

22    manner.  So we would like to have an opportunity to do that and

23    submit to your Honor a plan to do that and submit a further

24    order on that point.

25            THE COURT:  All right.  Ms. Ragone.

c322mehc

1          MS. RAGONE:  Yes.  Your Honor, first of all, I would

2     like to express my gratitude to the court having us in on this

3     short notice.  Ms. Mehta is leaving tomorrow, is our

4     understanding, so I do thank you for having us in today.

5          On behalf of Megabus, we really only have the concern

6     that the settlement proceeds are disbursed and the settlement

7     handled accordingly and properly.  It seemed a little irregular

8     to us to have the proceeds put into plaintiff's escrow account

9     on a general release, because then where does our obligation

10    begin and end in terms of those funds?  And if there is a

11    structure down the road, shouldn't that be in the release up

12    front?  So I think we are looking for a little guidance from

13    the court.  We understand plaintiff's proposal, we just have

14    expressed those concerns to him.  It was partially why we are

15    here today, just to ensure that everything is handled properly

16    and that everyone's interests are protected, and this

17    settlement is, again, the paperwork is handed properly.

18         THE COURT:  I don't think I can be much help to you.

19    I thought the purpose was for you to put this on the record.  I

20    didn't realize that you were going to ask for rulings,

21    Ms. Ragone, and the propriety of resolving the matter in the

22    way that Mr. Reiter proposes.  I know that we are dealing with

23    infants.  The settlement has to be approved separately, doesn't

24    it?

25         MR. REITER:  No, your Honor.  We are asking that your

c322mehc

1    Honor simply approve it because the surrogates court of New

2    York has no jurisdiction in this case.  The plaintiff in this

3    case was appointed under the law of Delaware, because Megabus

4    is a Delaware domiciliary.

5            THE COURT:  What does the Delaware law provide?

6            MR. REITER:  Delaware provides that there is no

7    provision for any court approval of a settlement of wrongful

8    death.

9            THE COURT:  How about the Federal Rules of Civil

10   Procedure?  Doesn't that have something about the approval of

11   awards to infants, and the CPLR as well.

12           MR. REITER:  In the CPLR it does, your Honor, and your

13   Honor has jurisdiction as the presiding judge in this case, and

14   essentially the only person with jurisdiction in this case to

15   approve the settlement, and that's why we are here.

16           THE COURT:  Yes.  I mean, I am sympathetic to

17   Ms. Ragone's point.  If she puts the money into -- her client

18   puts the money into the court, if something goes wrong, it's

19   not been approved, or she may face a liability to the two

20   infants.

21           MR. REITER:  Let me say this, your Honor --

22           THE COURT:  Just a minute.

23           MS. RAGONE:  If I may, the only other point that

24   hasn't been raised is that this suit was brought in New York

25   State Supreme Court.  We removed it.  It was brought pursuant

c322mehc

1    to New York estates, powers and trust law, which provides for

2    court approval both in the case of a death and in the case of

3    proceeds for the benefit of infants.  So, again, that's another

4    basis where, notwithstanding the Delaware issuance of the

5    letters administration, I still believe that the approval of

6    the court is necessary.  Again, we are in every way trying to

7    cooperate with plaintiff, and we are working on this agreement.

8    We put together preliminary settlement papers.  We just want to

9    again make sure that everything is proceeds properly from this

10   point.  We are not trying to put up any roadblocks.

11           THE COURT:  I understand.

12           MR. REITER:  May I just say this, I am a little

13   surprised, because I had a lengthy discussion with Mr. Klar of

14   Ms. Ragone's office yesterday agreeing to exactly what I just

15   put forward to the court, that it would be paid into an escrow

16   account.  I was told that that was perfectly acceptable to the

17   defendant.  I prepared an order based upon my discussion with

18   Mr. Klar, and I am somewhat surprised at what Ms. -- these

19   legal issues that are being raised.

20           Your Honor has the authority to approve the settlement

21   and, in effect, you are the only person who has the authority

22   to approve the settlement.  So that's what we are here to do.

23           THE COURT:  I assume that I do have the authority.

24   But the authority is subject to various requirements, isn't it,

25   under the Federal Rules of Civil Procedure approving

c322mehc

1    settlements for infants and also with respect to CPLR.  What

2    the law is down in Delaware, Mr. Reiter, I have no idea.  This

3    is the first I am hearing of this.  I am not prepared to tell

4    you what to do.  If you really want to settle the case today,

5    my suggestion is, rather than putting it in the escrow account,

6    if there is any doubt about it, to pay it into the registry of

7    the Clerk's Office, subject to disbursement later on.  But I'm

8    not prepared to tell you today, until I get an enhanced level

9    of comfort, as to what the requirements are for approving

10   settlements for infants.  I want to go back and read the

11   pleadings again.  I am sure what you are doing is you are

12   trying to do the right thing.  I am trying to do the right

13   thing, too --

14           MR. REITER:  I quite understand, your Honor.

15           THE COURT:  -- down the line.

16           MR. REITER:  Well, I think, in that case, what I would

17   suggest is simply that we -- that the court approve the

18   settlement amount today.  You see, we did not intend at this

19   point to, in effect, set forth the manner in which the money

20   would be paid to the infants.  That's what we wanted to

21   preserve as something to be worked out.  But the issue today

22   was simply to approve the settlement amount.

23           THE COURT:  There is no doubt about that, is there,

24   Ms. Ragone?

25           MS. RAGONE:  There is no doubt about the settlement

c322mehc

1    amount.

2              MR. REITER:  Right, and also to approve the attorney's

3    fee.

4              THE COURT:  No doubt about that.  Do you have a

5    retainer agreement that provides for 30 percent?

6              MR. REITER:  Yes, your Honor.  And that the remainder

7    of the funds -- I mean, it was our agreement that it be placed

8    in an escrow account.

9              MS. RAGONE:  Subject to the court's approval.

10             MR. REITER:  Subject to the court's approval.

11             MS. RAGONE:  Which is all we are seeking to do is

12   obtain the court's approval.

13             MR. REITER:  Okay.  So now Ms. Ragone is saying that

14   all she wants is the court's approval to follow this procedure;

15   that they have no objection to it.  Is that right?

16             MS. RAGONE:  If the proper procedures have been

17   followed, which is what we have expressed to you as concern

18   about the approval process.  But once the court -- everything

19   is in order, and the court has approved it, we will of course

20   follow through with everything we have discussed.  We just have

21   to make sure the proper channels are followed.

22             THE COURT:  I am afraid I can't -- I am looking under

23   the Federal Rules of Civil Procedure.  I don't have the CPLR.

24   What are the CPLR provisions, Mr. Reiter?  Do you know?

25             MR. REITER:  Yes, your Honor, simply that we provide

c322mehc

1    your Honor with a set of papers indicating the reasonableness

2    of the settlement, and I do have such a set of papers that I

3    have prepared with an affidavit in accordance with, in effect,

4    what we would do under the CPLR.

5            THE COURT:  Do you want to hand those up?

6            MR. REITER:  Yes, your Honor, and also a proposed

7    order.  But this is my attorney's affidavit, which sets forth

8    the facts of the case, enclosing the terms of the retainer

9    agreement, a copy of the OCA retainer statement filed with the

10   Office of Court Administration, and setting forth the

11   reasonableness of the settlement and containing specific

12   language that we have not become concerned in the action on

13   behalf of anyone except for our client.

14           THE COURT:  Let me review these papers, please.

15           MR. REITER:  Yes, your Honor.

16           (Pause)

17           THE COURT:  The plaintiff is Monica Mehta, as

18   administratrix of the estate of Ashwani Mehta.  Are the

19   children involved in this at all?

20           MR. REITER:  In what sense, your Honor?

21           THE COURT:  I am asking.  That's the question.  Are

22   they involved at all?  Do they have any interest in the

23   proceeds.

24           MR. REITER:  Of course, your Honor, they do.

25           THE COURT:  And how do they have an interest?

c322mehc

1          MR. REITER:  Because the -- as beneficiaries of a

2    wrongful death, they have an interest in that a substantial

3    portion of the settlement was paid because of their claim for

4    nurture, care, and guidance, their loss of nurture, care, and

5    guidance of their father and also for loss of support.  And

6    they are statutory beneficiaries under New York law and would

7    be entitled to take under wrongful death.

8          THE COURT:  How much are they entitled to take?  Is

9    that apportioned.

10         MR. REITER:  It is apportioned, and there is a formula

11   called the Kaiser formula.  Essentially the Kaiser formula in

12   this case would result in the children getting approximately 50

13   percent of the settlement and the mother getting 50 percent of

14   the settlement.  However, it is my understanding that Monica

15   wants to have the children to have one third of the settlement

16   each and she have one third of the settlement.  So she wants to

17   give more to the children than the statutory entitlement would

18   be.

19         THE COURT:  How do -- how are we going to be sure that

20   that is achieved?

21         MR. REITER:  Because, your Honor, we are going to

22   submit a further order to you on the distribution of the funds,

23   meaning the shares, and also -- and I will set forth very

24   clearly what the law is in the State of New York on these

25   points.  It is a formula that's used, but the plaintiff always

c322mehc

1    has the option to give more to her children than she would

2    otherwise be required to do.  And in this particular case there

3    is a valid reason for doing so, because the loss of nurture,

4    care, and guidance for her two children, because they are so

5    young, and because of the relationship that they had with their

6    father was a very substantial part of the settlement in the

7    case.

8            THE COURT:  I found what I was referring to,

9    Mr. Reiter, is Local Civil Rule 83.2, which provides for the

10   settlement of actions by or on behalf of infants and/or

11   incompetents in a wrongful death action and actions for

12   conscious pain and suffering of the decedent, that it provides

13   that the proceedings, upon an application to settle or

14   compromise such an action, shall conform as nearly as may be to

15   New York State statutes and rules.  I could waive those

16   requirements for good cause shown.  I can authorize payment of

17   counsel for the infant or incompetent a reasonable attorney fee

18   and proper disbursements.  And I shall order the balance of the

19   proceeds and the recovery or settlement be distributed as it

20   deems best may protect the interests of the infant or

21   incompetent.  So I would like to know more about what the New

22   York procedures are.

23           MR. REITER:  The New York procedure is essentially

24   what we have just done, which is we submit an affidavit

25   outlining the nature of the case, the retainer agreement

c322mehc

1    between the client and the attorney -- normally it would be a

2    listing of all the costs and disbursements, but in this

3    particular case we are waiving all costs and disbursements --

4    and also setting forth facts from which the court can determine

5    that the settlement is reasonable.  And that's essentially the

6    New York practice.  That's what the affidavit must provide in

7    the CPLR, those elements, and we followed that procedure.  We

8    also -- this is a procedure that we have followed in many cases

9    in this court.  Particularly, more -- I guess it is not too

10   recent anymore, but we had, I don't know, 15 or 16 cases in

11   Flight 587 before Judge Sweet.  All of those cases were

12   settled, and the process was completed through the federal

13   court without any other courts' intercession, so to speak,

14   under this particular rule.  So we have submitted a set of

15   papers which, in effect, are the same allegations we would make

16   in a state court proceeding.

17           THE COURT:  Not same allegations, same

18   representations.

19           MR. REITER:  Same representations.

20           And in view of the fact that -- just to give the court

21   an idea of the parameters of this settlement and the

22   reasonableness of it, number one, it was a recommended figure

23   by Justice Ellerin, after hearing the presentations of the

24   parties, including an expert presentation by our economist whom

25   we brought to the mediation, and also the presentation of the

c322mehc

1    defendants in which the defendants argued very strongly that

2    there was no evidence of any conscious pain and suffering on

3    behalf of this individual because of the nature of the injuries

4    that were sustained and the type of accident that it was.  And

5    as I said, the gravamen, I think the most significant portion

6    of the claim always was the -- not only the pecuniary loss to

7    the widow, but the loss of nurture, care, and guidance.  And it

8    was Justice Ellerin's recommendation to both sides that this

9    was the appropriate figure, after hearing both sides.  So this

10   is not just a settlement arrived at without a very, very

11   knowledgeable --

12          THE COURT:  I have great respect for Judge Ellerin.  I

13   know she is a wise person of long and distinguished experience

14   on the court.  I assume that both parties went there and made

15   their best arguments.  You say you had experts and she heard

16   from Ms. Ragone's clients, who had their own arguments, and

17   after due consideration she reached a conclusion and made a

18   recommendation which found favor with both parties.  So I am

19   not going to quarrel with the $3.150 million settlement.  I

20   think that's reasonable.

21          I guess the only question is, Mr. Reiter, should it go

22   to your account, your escrow account, as opposed to the

23   registry of the court pending further disbursements?  And what

24   kind of representation are you going to make to me in the

25   future about how the children of Mr. Mehta are going to be

c322mehc

1    preserved, their interests in the settlement is going to be

2    preserved and protected?

3            MR. REITER:  My recommendation to the family, to

4    Monica, and my representation is that the -- that money should

5    be put to the same use, in effect, that any New York structured

6    settlement would be.  In other words, that this money should be

7    put into a structured settlement annuity under the jurisdiction

8    of this court and the State of New York, who guarantees those

9    type of settlements, and that that money be held until, in

10   effect, the children are 18, and that at that point the money

11   can be paid out to them at their request.

12           THE COURT:  Must it be paid out at 18?

13           MR. REITER:  Some of it has to be paid out at 18.

14   Typically these settlements are -- by law the children are

15   entitled to it.  But this court can approve a structured

16   settlement in which the children got lifetime income and lump

17   sum payments typically when they are 18, 25, 30, 35.  It is not

18   usual to go beyond 35 because --

19           THE COURT:  That's what I have in mind.  A lot of

20   people say at 18 it is not provident to give somebody several

21   hundred thousands of dollars.

22           MR. REITER:  I agree completely.

23           THE COURT:  I don't know whether Ms. Mehta agrees.  We

24   want to hear from her on this.

25           MR. REITER:  We have discussed this.  And typically

c322mehc

1    what we like to do is set aside a certain amount -- for

2    example, if they want to go to college we give them enough for

3    tuition, and at the end of age 24 give them another lump sum.

4    But this is all something that it is going to take a little

5    time and work to hash out and get proposals and get the proper

6    information so that she can make an informed decision.  But if

7    your Honor is more comfortable -- I mean, I will represent to

8    the court I want to do this and get this all to your Honor

9    before the 21 days where the defendant would have to pay.

10   That's my intention.

11            THE COURT:  Ms. Ragone, you have seen the settlement

12   order?

13            MS. RAGONE:  No, your Honor.

14            (Pause)

15            MS. RAGONE:  I have reviewed the order.

16            THE COURT:  Let's go through this paragraph by

17   paragraph.  You have no objection to the 3,150,000 settlement,

18   correct?

19            MS. RAGONE:  That's correct.

20            THE COURT:  How about the apportionments, apportioned

21   entirely unto the cause of action for wrongful death, and no

22   portion is for conscious pain and suffering?

23            MS. RAGONE:  That's correct.

24            THE COURT:  You have no objection to that?

25            MS. RAGONE:  No objection.

c322mehc

1        THE COURT:  And the plaintiff is empowered to execute

2   and deliver to defendant the general release and stipulation of

3   discontinuance?  You have no objection to that, do you?

4        MS. RAGONE:  That's plaintiff's attorney's

5   representation.  I will take him on his word.

6        THE COURT:  And the attorney's fee is $945,000, which

7   appears to be consistent with the retainer agreement, and it is

8   to be paid within the time prescribed by CPLR 5003.A.  What is

9   that time period?

10        MR. REITER:  21 days, your Honor.

11        MS. RAGONE:  21 days from receipt of the signed

12   release.

13        MR. REITER:  Yes.

14        THE COURT:  And the balance of $2,205,000 to be paid

15   to Mr. Reiter, said funds to be deposited into an

16   interest-bearing escrow account for the benefit of Ms. Mehta,

17   pending further order of this court.  So that money would not

18   be deposited until when?

19        MR. REITER:  Also within 21 days.

20        THE COURT:  Of the --

21        MR. REITER:  -- of delivery of the release, which we

22   are prepared to sign today.

23        THE COURT:  Do you have any objection to that?

24        MS. RAGONE:  I think the only question that remains

25   still is the last paragraph pertaining to the payment to

c322mehc

1    counsel's account directly because, again, the question of my

2    carrier -- the carrier that will be paying this settlement is

3    AXIS Surplus Insurance.  It is their requirement that if the

4    funds are going to be structured, they have a company they work

5    with, who we are not requiring that plaintiff use, but that

6    they coordinate with the company plaintiff chooses to enter

7    into the structure or to establish a structured -- the annuity.

8    So, again, where does our liability end?  If we pay it into

9    Mr. Reiter's account, we are still involved to the extent we

10    have to ensure the proper channeling of the funds.

11            THE COURT:  Do you have some language that you want to

12    propose for Mr. Reiter's consideration?

13            MS. RAGONE:  We had done that last night.  We had

14    supplied a release with at least preliminary language because

15    we didn't have exact figures or information, we don't know what

16    company would be used for the annuity and specifics of that

17    nature, but we did send over a proposed outline of what we were

18    looking for, and Mr. Reiter had rejected that language.

19            THE COURT:  Mr. Reiter.

20            MR. REITER:  And I will tell you why, your Honor.

21    Because we are not obligated to use any structure company or

22    any broker that this defendant chooses.  We do not want to use

23    any of their designees or anything like that.  This is solely

24    up to the plaintiff, Monica Mehta, as to what insurance company

25    she wants to use and what broker she wants to use, and we don't

c322mehc

1    want to be bound by any agent of the defendant here.

2              THE COURT:  What is it precisely that you want,

3    Ms. Ragone?

4              MS. RAGONE:  My carrier requires simply that counsel

5    or the broker of their choosing coordinates with a broker that

6    AXIS uses on a regular basis for the distribution.  This is a

7    substantial sum of money.

8              THE COURT:  What is the basis for that?

9              MS. RAGONE:  It is their ordinary -- it is their

10   business practice to ensure that the money is properly

11   channeled.  We are talking about a substantial amount of money

12   here.  They want to ensure that it's put into the proper

13   channels.  That the statutory requirements --

14             THE COURT:  It sounds to me like they want a marketing

15   opportunity.  So they can sell --

16             MS. RAGONE:  No, not at all.  They are not requiring

17   that plaintiff use their broker.  They are just asking that we

18   be permitted to oversee -- and, again, this is something that

19   we would have -- the terms of which we would have included into

20   our settlement paperwork.

21             THE COURT:  You are going to see Mr. Reiter's

22   proposal, aren't you?  If you have some objection to it, you

23   can voice some objection to it.  You are not paying the money

24   over until -- you are not paying over anything for 21 days, is

25   that correct?

c322mehc

1          MS. RAGONE:  It would be --

2          THE COURT:  Mr. Reiter says he is going to have this

3  disbursal plan in here within the 21 days.  If you object to

4  it, I will consider the objection.  But he is not going to get

5  any money until we have had another proceeding here.  Is that

6  right, Mr. Reiter?

7          MR. REITER:  Yes, your Honor.

8          MS. RAGONE:  That's fair.  Counsel, we had discussed a

9  general release, which I brought a copy of today.  But that

10  does not include any provision for any structure of the money

11  or the payout.  So if we are going to delay the execution of

12  the release pending additional language to be included, I have

13  no objection.

14          MR. REITER:  No, we are not going to delay the

15  execution of the release.  That's the whole point.

16          THE COURT:  That's the starting point.

17          MR. REITER:  That's the whole point.

18          THE COURT:  You start -- you approve the settlement,

19  he gives you a release, it starts the 21-day period.  Before

20  any money flows, as I understand it, Mr. Reiter and you will be

21  back here.

22          MR. REITER:  Yes, your Honor.

23          THE COURT:  If you have any objection to his plan,

24  which he has to submit pursuant to CPLR Section 5003.A, you can

25  object at that time.  It is without prejudice to anything you

c322mehc

1   may want to object.

2          MS. RAGONE:  Will the court -- I just want to ensure,

3   so I can advise my client, if there are objections at that

4   point, can we stay the 21 days?  Because otherwise then we are

5   on a clock running 21 days and sometime along that period --

6          THE COURT:  If you object and I sustain your

7   objection, we will have to take it up at that time.  I'm not

8   making any promises one way or the other.  But if I don't

9   approve it, I assume you don't pay.

10          MS. RAGONE:  I just want to ensure there are

11   protections for my client.

12          MR. REITER:  Yes, your Honor, except for one thing.  I

13   want to make it clear that that applies to the balance due to

14   Monica Mehta, not to the attorney's fee.  The attorney's fee is

15   due and payable.  We are going to execute the release today,

16   and that does start the 21 days for the attorney's fee.  But

17   that has nothing to do with what we are talking about here.

18   The point is that with respect to Monica Mehta and the

19   distribution to the children, we will be back here within the

20   21 days with a plan.

21          THE COURT:  When do you anticipate getting your

22   attorney's fees?

23          MR. REITER:  Within 21 days of executing the release,

24   which we want to do today.

25          THE COURT:  And Ms. Mehta will get no money until 21

c322mehc

 1      days either.

 2                 MR. REITER:  That's correct, that's correct.

 3                 THE COURT:  No money is going to flow until you are

 4      back here again.  Today is the 2nd of March, so when will you

 5      be back?

 6                 MR. REITER:  Your Honor, what I wanted to avoid,

 7      because -- what I wanted to do was make sure that the portion

 8      attributable to the attorney's fee is not going to be held up,

 9      because that is not part of any problem that you have or that

10      the defendant has.  All they have is how is the money for the

11      children going to be distributed.

12                 THE COURT:  Let me tell you what my practice is.  You

13      probably don't like this, Mr. Reiter, but you won't be

14      surprised by it.  The lawyers don't come first.  The client you

15      are serving should come first.  So the idea that you are

16      getting at the money first, this happens routinely in

17      settlement of class actions where the lawyers get the money

18      first.  I always say pay out the claims first.

19                 MR. REITER:  I accept your Honor's philosophy on this

20      point.

21                 THE COURT:  I don't think it is going to make a

22      difference.

23                 MR. REITER:  It doesn't look like it.

24                 THE COURT:  Yes.

25                 MR. REITER:  I will say, so that it doesn't seem that

c322mehc

1    I am being overreaching or overbearing on this point, is that

2    the New York State legislature passed a specific law which

3    provides for the attorney to make the application immediately

4    upon the release being signed.

5            THE COURT:  And I think we know why, too, don't we?

6            MR. REITER:  Pardon?

7            THE COURT:  I think we know why the legislature went

8    along with this.

9            MR. REITER:  Because there is usually a delay in the

10   rest of the proceeding.

11           THE COURT:  I think it's because the trial lawyers

12   have insisted upon it, and that's why we don't have tort reform

13   either.

14           MR. REITER:  And it's a wonderful thing.

15           THE COURT:  But I'm in a federal court and I'm not in

16   the State Supreme Court, and I'm going to do what I think is

17   appropriate in the circumstances.

18           MR. REITER:  In that case, your Honor, we will execute

19   the release today, and we will then have a -- as soon as we

20   have a plan, we will present it and ask your clerk to schedule

21   us.  Is that okay?

22           THE COURT:  That's okay.  You want to do it within 21

23   days?

24           MR. REITER:  Yes, your Honor.

25           THE COURT:  So 21 days from today is by the 23rd.  I

c322mehc

 1    have a criminal trial starting on the 21st, so I suggest you do

 2    it on -- we schedule it for the 19th or the 20th.

 3              MR. REITER:  Okay.  And if we can advance that, we

 4    will --

 5              THE COURT:  If you can advance it, let me know, and we

 6    will advance it.

 7              MR. REITER:  Very good.

 8              THE COURT:  Subject to that, I am going to sign the

 9    settlement order.  Somebody will order a copy of the

10    transcript.  But it's clear that no funds are going to flow

11    until we meet again, which will be within 21 days, when we have

12    the plan from Mr. Reiter as to how the infant concerns are

13    going to be addressed.

14              MS. RAGONE:  Your Honor, if I may make an inquiry

15    before we wrap up, the general release signed today by

16    Ms. Mehta will not include that plan.  Will we then be

17    supplied -- you know, I don't know how that works in terms of

18    the 21 days or if it will come after.  The defendants would

19    request that Ms. Mehta sign off on a revised release or

20    including the new plan that will be proposed by Mr. Reiter.

21              THE COURT:  I don't see how she can sign off on a plan

22    that hasn't been presented to the court.  You have to take the

23    general release, because the general release will start the

24    21-day clock running.  I am preserving your rights with respect

25    to objections.  No money will flow until all objections have

c322mehc

1   been addressed.  Mr. Reiter is not going to get his fee until

2   Ms. Mehta gets her settlement, and that will happen within 21

3   days.  But we have to start someplace.

4            MS. RAGONE:  No, I understand, and I accept those

5   terms.  I am just asking, once the plan is proposed to your

6   Honor, once that is established, I do ask that she sign off

7   again, just to ensure that she is in full acknowledgment of

8   that plan and she consents to the same.

9            THE COURT:  I would think that's appropriate.  Is

10   Ms. Mehta going to be in town?

11            MR. REITER:  No, your Honor.  It will have to be

12   done -- you see, the inclusion of these terms in the release is

13   unnecessary.  That's the point.  A release is a release.

14            THE COURT:  When I see the plan, I want to be sure

15   that Ms. Mehta agrees to the plan, right?

16            MR. REITER:  Absolutely, your Honor.  She will be

17   signing it.  But I don't say that we need to sign a new release

18   is all I am saying.

19            THE COURT:  Sign the release.  I am going to sign the

20   settlement order.  Marlon, give me a date on the 19th or 20th.

21            THE DEPUTY CLERK:  Monday, March 19, at 1:45 p.m.,

22   your Honor.

23            THE COURT:  Is that all right with you, Mr. Reiter?

24            MR. REITER:  Yes, your Honor.  Thank you.

25            THE COURT:  I would like to see the plan that you want

c322mehc

1    me to approve, if we are coming in on the 19th, if you can get

2    it in on the 15th or 16th.

3              MR. REITER:  Yes, your Honor.

4              THE COURT:  The settlement order will be put on ECF

5    this afternoon.

6              MR. REITER:  Thank you very much, your Honor.

7              MS. RAGONE:  Thank you, your Honor.

8              THE COURT:  Ms. Ragone, what does this do to the other

9    actions that you have?

10              MS. RAGONE:  Nothing, your Honor.  They will be

11    proceeding.  I think we have a conference on March 22 or the

12    23rd.

13              THE COURT:  Am I correct that Mr. Tomaszewski was

14    acquitted?

15              MS. RAGONE:  You are correct, on Tuesday.

16              THE COURT:  See you on the 19th.  Anything else?

17              MR. REITER:  Thank you very much for your Honor's

18    time.

19              MS. RAGONE:  Thank you, your Honor.  That's all.

20                             -  -  -

21

22

23

24

25